**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Sep 04 2014, 9:32 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
**TIMOTHY J. BURNS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT MULAR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1311-CR-947 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable H. Patrick Murphy, Commissioner
Cause No. 49F07-1304-CM-27416

**September 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Robert Mular was convicted after a bench trial of operating a vehicle while intoxicated[1] as a Class A misdemeanor. He appeals raising the following restated issue for our review: whether sufficient evidence was presented to support his conviction, specifically that he was the operator of the vehicle involved.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of April 26, 2013, Craig Mitchen, who lived in Marion County, Indiana, was working in his front yard, mulching his flower bed. At approximately 4:00 p.m., Mitchen observed a minivan enter the cul-de-sac where his house was located. The minivan slowly drove around the cul-de-sac, stopped in front of Mitchen's house, and began backing up. Because the minivan was about to back into a neighbor's mailbox, Mitchen ran over, waving his arms and telling the driver to stop. However, the minivan still backed into the mailbox.

Mitchen approached the driver of the minivan, who he later identified as Mular, and asked what Mular was doing. Mular stated that he was looking for a table saw that he had seen for sale on craigslist. *Tr*. at 9. Mitchen told Mular that he did not have a table saw for sale, but went to check with a neighbor, who was also not selling a table saw. When Mitchen was talking with Mular, the window of the minivan was open and Mular also opened the door during the conversation. Mitchen did not observe anyone else inside of the minivan. Mitchen noticed that Mular was "wobbling" and slurring his speech, and

---

[1] *See* Ind. Code § 9-30-5-2(b).

Mitchen was worried that Mular had a health issue. *Id*. at 10. Mitchen went back to mulching his flower beds, and Mular remained in the minivan, leaning back in the seat. After approximately fifteen minutes, Mitchen called the police because he became concerned that something was wrong with Mular.

Indianapolis Metropolitan Police Department Officer Ivan Ivanov arrived at the scene at approximately 4:25 p.m. He approached the minivan, which was still parked in the cul-de-sac, and saw Mular sitting in the driver's seat of the vehicle. Officer Ivanov observed that the engine of the minivan was not running, but it was still warm as if it had recently been running. Officer Ivanov asked Mular what was going on, and Mular told the officer he was looking for a table saw, but he was on the wrong street. The officer could smell the odor of an alcoholic beverage on Mular's breath and noticed that Mular had glassy and bloodshot eyes and was slurring his speech, all of which were indications of intoxication. Officer Ivanov asked Mular to step out of the minivan. Mular "slipped out" of the minivan and leaned against the vehicle. *Id*. at 34.

Officer Ivanov noticed an empty vodka bottle inside of the minivan near where Mular had been seated and a plastic cup containing an alcohol-soda mixture in the center console. Officer Ivanov started to perform field sobriety tests on Mular, but Mular stated that he could not perform a horizontal gaze test because one of his eyes was "not working well" and that he could not perform a step and turn test or one-leg stand because "he was unsteady on his knees." *Id.* at 36. Officer Ivanov then read Mular the implied consent warning, and Mular consented to a chemical test. Mular was transported to Butler

University, where a breath test was administered, which indicated that Mular's blood alcohol content was .17. Mular was then arrested.

The State charged Mular with Class A misdemeanor operating a vehicle while intoxicated and Class A misdemeanor operating a vehicle with a blood alcohol content of at least .15. On October 17, 2013, a bench trial was held, and Mular was found guilty as charged. The trial court merged the two convictions and only entered judgment for the conviction of operating while intoxicated as a Class A misdemeanor. The trial court then sentenced Mular to 120 days with 20 days served in jail and the balance in community corrections. Mular now appeals.

## DISCUSSION AND DECISION

Our standard of review for sufficiency claims is well settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Parahams v. State*, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id*. If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id*. It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the credibility of the witnesses. *Cole v. State*, 967 N.E.2d 1044, 1050 (Ind. Ct. App. 2012).

Mular argues that insufficient evidence was presented to support his conviction for operating a vehicle while intoxicated. Specifically, he contends that the evidence did not

4

prove that he was the driver of the minivan. Mular asserts that his testimony at trial established that he had been drinking at home when an acquaintance, Phil, called and asked Mular to accompany him to see a table saw that was for sale. Mular alleges that it was Phil who was driving the minivan when it backed into the mailbox and that Mular then scooted over to the driver's seat to wait for Phil after he exited the minivan. Mular contends that this evidence was not rebutted by the State's witnesses, and therefore, the evidence presented was not sufficient to support his conviction.

In order to convict Mular of operating a vehicle while intoxicated as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that Mular operated a vehicle while in an intoxicated state in a manner that endangered a person. Ind. Code § 9-30-5-2. Mular does not dispute that he was intoxicated at the time of the offense, only that the evidence was insufficient to prove that he was driving the minivan.

Here, the evidence presented at trial established that Mular was the driver of the minivan. Mitchen observed Mular driving the minivan around the cul-de-sac and saw him back into the mailbox of Mitchen's neighbor. Mitchen then approached the minivan and spoke with Mular as Mular was sitting in the driver's seat of the minivan. Mitchen did not see anyone else in the minivan or anyone else exit the vehicle. When Officer Ivanov arrived, Mular was in the driver's seat of the minivan. No one else was inside the minivan, or even at the scene, except for Mitchen. The evidence presented was sufficient to prove that Mular was operating a vehicle while intoxicated and to support his conviction. Mular's arguments that someone else was actually driving the minivan is merely a request for this

5

court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do on appeal. *Parahams*, 908 N.E.2d at 691.

Affirmed.

MAY, J., and BAILEY, J., concur.